United States District Court
Southern District of Texas
**ENTERED**
August 02, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GUSTAVO BAEZ, | § | |
|  Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-cv-138 |
| | § | |
| UR M. JADDOU, as *Director*, | § | |
| *U.S. Citizenship and Immigration* | § | |
| *Services*; ALEJANDRO | § | |
| MAYORKAS, as *Secretary,* | § | |
| *Department of Homeland Security*; | § | |
| and ANTONY J. BLINKEN, | § | |
| as *United States Secretary of State*, | § | |
|  Defendants. | § | |

## REPORT AND RECOMMENDATION
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. Synopsis

Plaintiff Gustavo Baez ("Baez") claims United States citizenship through his birth in Mexico to a United States citizen father. The Defendants, collectively immigration officials, claim Baez's father was not in the United States for the requisite time required for Baez to gain United States citizenship. Upon completion of discovery, Baez moved for summary judgment based upon his claim for derivative citizenship through his United States citizen father, Gustavo Baez-Gonzalez ("Gus, Sr."). This Court finds a genuine issue of material fact exists concerning Gus, Sr.'s physical presence in the United States prior to Baez's birth, because third party affidavits, sworn statements, and depositions conflict with Gus, Sr.'s account of his history in the United States. Therefore, this Court recommends denying Plaintiff's Motion for Summary Judgment.

1

## II. Jurisdiction

Because Baez filed suit against United States Government officials based upon a federal immigration statute, this cause of action confers federal question jurisdiction upon this federal district court to hear this case under 28 U.S.C. § 1331.

## III. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts concern those which are necessary to prove an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, a court must look to the substantive law to "identify which facts are material." *Id*. Further, "[a]ny proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry." *Id*. A party is entitled to judgment as a matter of law when "the evidence . . . is so one-sided that one party must prevail as a matter of law." *Id*.

When examining the evidence presented "[t]he Court views the evidence in a light most favorable to the non-movant," or the Defendants in this case. *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (2004). The non-movant may also "go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* While reviewing the evidence, a court must "refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-399 (2008).

## IV. Background

### a. Factual Background

The following facts are undisputed. Baez's father, Gus, Sr. was born in Matamoros, Tamaulipas, Mexico on September 3, 1942. Dkt. No. 36-3.[1] While not born in the United States, Gus, Sr. became a citizen on the date of his birth, because he was born to a United States citizen parent. Dkt. No. 36-4, p. 2; Dkt. No. 36-5, p. 9. Gus, Sr. later received his Certificate of Citizenship on March 14, 2016. Dkt. No. 36-4, p. 2. Previously, Gus, Sr. was

---

[1] Accordingly, Gus. Sr. turned fourteen years old on September 3, 1956. The year Gus Sr. turned fourteen is relevant to the physical presence requirement of the statute upon which Baez bases his cause of action.

issued a Mexican form "Forma Migratoria" on or about September 9, 1958. Dkt. No. 36-4, p.3.

Baez's mother, Maria Guadalupe Hernandez, was born in Matamoros, Tamaulipas, Mexico on June 6, 1944. Dkt. No. 36-5, p. 10. Baez's father and mother married in Matamoros, Tamaulipas, Mexico on May 22, 1966. Dkt. No. 36-5, p. 10; Dkt. No. 36-2, pp. 2-3. Baez was born on February 10, 1972, in Matamoros, Tamaulipas, Mexico. Dkt. No. 36-1. Baez was born in wedlock.

In 2015, Baez filed an N-600 Application for a Certificate of Citizenship on the basis that he is a biological child of a United States citizen parent, referring to his father, Gus, Sr. Dkt. No. 36-5, p. 6. The 2015 application was denied. Dkt. No. 1, p. 2; Dkt. No. 14, p. 2. In 2018, Baez filed an application for a United States passport in which Gus Sr. writes that he has been physically present in the United States since July 1962. Dkt. No. 37-3, p. 3. The 2018 application was denied. Dkt. No. 36, p. 2; Dkt. No. 14, p. 6. Baez filed a subsequent unsigned and undated application for a United States passport.[2] Dkt. No. 36-6; Dkt. No. 37-4. On that application, Gus, Sr. writes that he has been physically present in the United States since January 1, 1962.[3] Dkt. No. 36-5, p. 12; Dkt. No. 37-4, p. 2. That application was also denied. Dkt. No. 1, p. 2; Dkt. No. 14, p. 2.

The following facts surrounding Gus, Sr.'s physical presence in the United States are disputed. As part of Baez's 2015 Application for Certificate of Citizenship, Baez attached an affidavit from his father, Gus, Sr. Dkt. No. 36-5, p. 15. In that affidavit, Gus, Sr. states that he began permanently residing in the United States in 1962. *Id*. No exact date is provided. *Id*. Further, Gus, Sr. alleges that he began living at property owned by Raquel

---

[2] In Defendants' Opposition and Response to Baez's Motion for Summary Judgment, Defendants refer to two United States Passport applications from Baez. Dkt. No. 36, p. 9. The evidence presented to this Court shows two United States passport applications, one dated 2018 and one without a signature or date. Dkt. No. 37-3, p. 4; Dkt. No. 37-4, p. 4.

[3] Defendants argue that if Gus, Sr. was physically presence in the United States since July 1962, this "would roughly total nine years and seven months of physical presence." Dkt. No. 37, p. 5. If Gus, Sr. was in the United States since January 1, 1962, this would total roughly ten years and one month of physical presence.  This Court leaves the determination of exactly when Gus, Sr.'s physical presence in the United States began to the factfinder because this Court finds that the evidence presented demonstrates a genuine issue surrounding this material fact.

Almanza in 1962, located at 1705 East 13th Street in Brownsville, Texas. *Id*. Gus, Sr. also claims he stayed at that location for a total of 12 years. *Id*. He alleges he rented one of the rooms on the property, and Amelia Torres rented the other available room. *Id*. Gus, Sr. also claims that he "immediately began working with Isidro Guzman" after moving to Brownsville, Texas. *Id*.

Baez's application also included an affidavit from Amelia Torres, whom Baez's father alleges he lived alongside at Almanza's residence. Dkt. No. 36-5, p. 25. In her affidavit, Torres alleges that she did indeed live at Almanza's residence, beginning in 1950. *Id*. Further, Torres states that she became friends with Baez's father while they lived at the same address, however, Torres provides no specific date concerning when Gus, Sr. began living at 1705 East 13th Street address. *Id*.

Baez's application also included an affidavit from Maria Elena Guzman, the wife of the Isidro Guzman, whom Gus, Sr. alleges he began working with immediately after moving to the United States in 1962. Dkt. No. 36-5, p. 27; Dkt. No. 36-5, p. 15. In her affidavit, Guzman states that she met Baez's father "on or about 1969." Dkt. No. 36-5, p. 27. She states that Gus, Sr., and her husband met while they both lived in Mexico. *Id*. According to Guzman, her husband offered Gus, Sr. a job when the married couple moved to the United States. *Id*. No date for the move to the United States is provided. *Id*. Guzman also provided Isidro Guzman passed away. *Id*.

Baez's application also included an affidavit from Raquel Almanza from 2005, the property owner of 1705 E 13th Street, Brownsville, Texas 78520. Dkt. No. 36-5, p. 31. In her affidavit, Almanza states that Mrs. Torres did indeed live at her home at that address from 1950 until 2001. *Id*. Baez's application also included a sworn statement dated in 2015 from Juana Almanza Baez, Almanza's sister. *Id*. According to Juana Almanza Baez's statement, Raquel Almanza passed away in 2011. *Id*. Still, Juana Almanza Baez attests to Gus, Sr. living at her sister's residence from 1962-1974 because she saw him there when she visited her sister over the years. *Id*.

Baez included these same sworn affidavits with his subsequent United States Passport Application. Dkt. No. 36-6, pp. 4, 13, 15, 18, 20. In addition, Baez included a

4

sworn statement from Father Michael Amesse from Immaculate Conception Cathedral, located in Brownsville, Texas. Dkt. No. 36-6, p. 22. In this statement, Amesse states that Gus, Sr. worshipped in that church "since 1965 until the present day" of October 19, 2016. *Id*.

In response and in opposition to Baez's Motion for Summary Judgment, Defendants presented the Court with oral depositions of Baez, Gus, Sr.,[4] and Maria Elena Guzman. Dkt. No. 37; Dkt. No. 37-1; Dkt. No. 37-2. For the purposes of this Court considering Baez's Motion for Summary Judgment, this Court focuses on the deposition of Maria Elena Guzman. In her deposition, Maria Elena Guzman states that her husband, Isidro Guzman, "was working for the government officials in Matamoros" in 1962. Dkt. No. 37-2, p. 6. She further states that she married Isidro Guzman in 1968 and then moved with him to Brownsville, Texas. *Id*.

### b. Procedural Background

On October 4, 2022, Baez filed a Petition for Declaratory and Injunctive Relief against the following four parties: Ur M. Jaddou, in his official capacity as the Director of United States Citizenship and Immigration Services; Tracy Renaud, in her official capacity as the Senior Director of the Service Center Operations Directorate; Alejandro Mayorkas, in his official capacity as the Secretary of the Department of Homeland Security; and Antony J. Blinken, in his official capacity as the United States Secretary of State (collectively "Defendants"). Dkt. No. 1, p. 1.

Baez initially failed to timely serve all these defendants. Dkt. No. 8. This Court entered an order on January 5, 2023, directing Baez to show case cause as to why his case should not be dismissed for failure to timely serve the Defendants. Dkt. No. 8. Baez

---

[4] In his deposition, Mr. Baez-Gonzalez (Gus, Sr.) confirms a statement from his affidavit: he would leave Brownsville, Texas, or the United States generally, on weekends to visit his wife and family in Matamoros. Dkt. No. 36-5, p. 15; 37-1, p. 10. Defendants highlight this fact in their response and opposition to Baez's Motion for Summary Judgment. Dkt. No. 37, p. 5. Defendants argue that these trips must count against the INA's "*continuous* physical presence requirement." *Id*. Because this Court finds that a genuine issue of material fact exists, this Court declines to consider this argument at this stage. *But see Maldonado v. Limon*, No. 1:18-CV-114, 2022 WL 4856411, at *3 (S.D. Tex. Oct. 3, 2022) (stating that "[t]he physical presence requirement can be met through the cumulation of non-continuous periods of time within the United States.").

subsequently issued summons on each of the Defendants on that same day. Dkt. No. 9. Baez responded to the Order to Show Cause on January 10, 2023. Dkt. No. 10. A day later, this Court entered an order stating that it did not find that Plaintiff showed good cause for failure to timely serve the Defendants. Dkt. No. 11. Nevertheless, this Court used its discretionary powers to extend time for service. Dkt. No. 11, p. 2. On February 1, 2023, this Court instructed Baez to serve the defendants no later than January 31, 2023, and to file the proof of service for each defendant no later than February 6, 2023. Dkt. No. 12. On February 6, 2023, Baez responded to this Court's Order to File Proof of Service and timely provided proof of service. Dkt. No. 13.

Defendants filed a timely answer on March 24, 2023. Dkt. No. 14. On that same day, Tracy Renaud, the Senior Director of the Service Center Operations Directorate filed a Motion to Dismiss herself from the suit. Dkt. No. 15, pp. 1-2. Renaud argued that she was an improperly named party under § 1503(a), because she is not the head of the department or independent agency. Dkt. No. 15, pp. 1-2. On April 17, 2023, this Court ordered Baez to file a response stating whether he opposed Renaud's Motion to Dismiss. Dkt. No. 19. On April 21, 2023, Baez responded that he was unopposed to the motion. Dkt. No. 20, p. 2. On April 24, 2023, this Court granted the motion and Mr. Renaud was dismissed as a defendant. Dkt. No. 21.

On June 2, 2023, this case was reassigned from the Honorable Magistrate Judge Ronald G. Morgan to the Honorable Magistrate Judge Karen Betancourt.

Baez filed a timely Motion for Summary Judgment on February 16, 2024. Dkt. No. 36. Baez asks this Court for (1) a declaration that he is a United States citizen; (2) a permanent injunction mandating Defendants to issue a United States passport to Baez; and (3) award of Baez's costs and attorney's fees. *Id*. Defendants filed a timely Response in Opposition to that motion on March 8, 2024. Dkt. No. 37. Defendants argue that there exist genuine issues of material facts in Baez's case and so to grant summary judgment in Baez's favor would be improper. *Id*. Defendants argue that the testimony of Baez's father is controverted by other testimony as well as his own testimony. *Id*. Defendants argue that (1) Gus Sr.'s evidence presents more than one version of his time in the United States prior to

Baez's birth; (2) that Gus. Sr. misrepresented his physical presence in the United States on Baez's United States passport application[5]; and (3) the testimony of Maria Elena Guzman, Baez's witness, undermines Gus Sr.'s testimony. *Id*.

Now, this Court considers whether to recommend granting or denying Baez's Motion for Summary Judgment.

## V.      Applicable Law: Section 301(a)(7) of the Immigration and Nationality Act

Pursuant to 8 U.S.C. § 1503(a), an individual within the United States may challenge the denial of rights and privileges owed to him or her as a United States national. Courts considering these claims "must make a *de novo* determination of whether a plaintiff is a United States citizen." *Garcia v. Clinton*, 915 F. Supp. 2d 831, 833 (S.D. Tex. 2012). Citizenship is acquired only through birth or naturalization. *Bustamente-Barrera v. Gonzalez*, 447 F.3d 388, 394 (5th Cir. 2006). *See id*. (stating that "[n]aturalization is available only as provided by Acts of Congress . . ."). In cases where the child was not born in the United States but had a United States citizen parent, "[t]he applicable law . . . is the statute in effect at the time of the child's birth." *Iracheta v. Holder*, 730 F.3d 419, 423 (5th Cir. 2013).

In the present case, Baez bases his Motion for Summary Judgment upon his petition for naturalization. The law in effect at the time of Baez's birth in 1972 is Section 301(a)(7) of the Immigration and Nationality Act of 1952 (amended 1986) (current version at 8 U.S.C. §1401(g)) ("INA"). That law provides that among those who "shall be nationals and citizens of the United States at birth" are those who are born outside of the United States to a United States citizen parent who "was physically present in the United States . . . for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years." *Id*.

Considering this provision of the INA, a fact essential to Baez's claim concerns the length of Gus, Sr.'s physical presence in the United States prior to Baez's birth. Because of

---

[5] This Court declines to consider this defense argument, because, under the summary judgment standard of review, this Court does not address credibility issues nor weigh evidence. *Delta & Pine Land Co.*, 530 F.3d at 399.

7

the INA's ten-year physical presence requirement, Baez must demonstrate that Gus, Sr.'s physical presence in the United States began in at least early February 1962. If Baez makes this demonstration, Baez will also meet the requirement that at least five of the ten years of continuous physical presence be attained after the age of fourteen.[6] For this reason, the facts surrounding Gus, Sr.'s physical presence in the United States prior to Baez's birth are material facts. Therefore, because Baez is unable to demonstrate that there is no dispute over his father's physical presence in the United States beginning in at least early February 1962, a genuine issue of material fact exists. If a reviewing court finds this genuine issue of material fact exists, a court reviewing the case under the summary judgment standard would be unable to grant Baez summary judgment.

### VI. Analysis: A Genuine Issue of Material Fact Regarding Physical Presence Requirement

The evidence from the sworn statements, affidavits, and depositions of three third parties contradict the affidavit of Baez's father. For these reasons, this Court cannot determine exactly when Gus, Sr. began his physical presence in the United States. Because this fact is necessary to prove an element of Baez's naturalization claim, this conflict constitutes a genuine issue of material fact.

First, Maria Elena Guzman's deposition states that her husband lived and worked in Mexico until 1968. Dkt. No. 36-5, p. 27. This information directly conflicts with the affidavit from Baez's father, where Gus, Sr. states that he began working under her husband in 1962.[7] Second, even though Baez's father claims to have resided at Raquel Almanza's property on 1705 East 13th Street at the same time as Amelia Torres, Torres' statement does not assert that Baez's father lived at the house in 1962. Torres' statement only goes so far as to show that Gus Sr. did indeed have a physical presence at the 1705 East 13th Street,

---

[6] Gus, Sr. turned fourteen years old in September 1956, so he would have been over the age of fourteen for all ten years prior to Baez's birth.

[7] Because Baez was born in 1972, if Gus, Sr. did only begin working in the United States starting in 1968, four years later than alleged by Baez, this evidence would be sufficient to terminate Baez's claim that his father maintained a continuous physical presence in the United States for ten years prior to his birth. This Court leaves that determination to the factfinder.

Brownsville, Texas address. The Torres statement fails to include any dates which may directly corroborate Gus, Sr.'s allegation of a physical presence in the United States ten years prior to Baez's birth. Third, the sworn statement from Father Amesse, the priest at the church Gus, Sr. attends, attests only to Gus, Sr.'s presence at the church starting in 1965. The information from Father Amesse's statement shows only that Gus, Sr. did have a physical presence in the United States when attending the church services. Additionally, the 1965 date is insufficient to substantiate Baez's claim.

Baez has failed to show that there exists no genuine issue of material fact that his father Gus, Sr. had the required physical presence in the United States ten years prior to Baez's birth. As a result, Baez is not entitled summary judgment.

## VII. Recommendation

Because third party affidavits, sworn statements, and depositions conflict with Gus Sr.'s own account of when his physical presence in the United States began, this Court finds that a genuine issue of material fact exists in Baez's case. Consequently, this Court RECOMMENDS DENYING Plaintiff's Motion for Summary Judgment.

Because of this Court's recommendation denying summary judgment and the presently unresolved factual issues, the Court further RECOMMENDS DENYING without prejudice the application for attorney's fees. The present request for attorney's fees should be denied as premature. If it later becomes appropriate, a renewed application for attorney's fees may be filed with the District Court within 14 days after entry of a final judgment. 28 U.S.C. § 2412; Fed. R. Civ. P. 54(d)(2).

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a *de novo* review of the

record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a *de novo* review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

      Signed on August 2, 2024.

                                                                                    Karen Betancourt
                                                                                  United States Magistrate Judge